# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**

* * * * * * * * * * * * * * * * * * * * *
| | |
|---|---|
| ALYSSA SALERNO, * | |
| * | No. 16-1280V |
| Petitioner, * | Special Master Christian J. Moran |
| * | |
| v. * | Filed: October 22, 2021 |
| * | |
| SECRETARY OF HEALTH * | Attorneys' Fees and Costs; |
| AND HUMAN SERVICES, * | reasonable rate for expert |
| * | |
| Respondent. * | |

* * * * * * * * * * * * * * * * * * * * *

Michael A. London, Douglas & London, P.C., New York, NY, for Petitioner;
Heather L. Pearlman, United States Dep't of Justice, Washington, DC, for Respondent.

### UNPUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On December 29, 2020, petitioner Alyssa Salerno moved for final attorneys' fees and costs. She is awarded **$71,259.32.**

\*    \*    \*

On October 6, 2016, petitioner filed for compensation under the Nation Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10 through 34.

---

[1] Because this published decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). This posting means the decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

Petitioner alleged that the influenza and human papillomavirus vaccinations she received on November 12, 2013, caused her to develop a chronic migraine or, in the alternative, that these vaccinations significantly aggravated her preexisting headaches. Petition at 1. A series of expert reports were filed by the parties' expert neurologists, with petitioner retaining Dr. Hal Gutstein and respondent retaining Dr. Peter Bingham. After the parties completed their development of evidence, the parties were ordered to submit briefs before any potential adjudication. In lieu of holding an entitlement hearing, the undersigned issued his decision dismissing the petition on May 29, 2020 for insufficient proof because the medical theory advanced by petitioner has been consistently rejected as unreliable and unpersuasive. 2020 WL 3444163 (Fed. Cl. Spec. Mstr. May 29, 2020).

On December 29, 2020, petitioner filed a motion for final attorneys' fees and costs ("Fees App."). Petitioner requests attorneys' fees of $56,167.50 and attorneys' costs of $23,151.84 for a total request of $79,319.34. Fees App. Ex. 1. Pursuant to General Order No. 9, petitioner warrants that she has not personally incurred any costs related to the prosecution of her case. Fees App. Ex. 4. On January 1, 2021, respondent filed a response to petitioner's motion. Respondent argues that "[n]either the Vaccine Act nor Vaccine Rule 13 contemplates any role for respondent in the resolution of a request by a petitioner for an award of attorneys' fees and costs." Response at 1. Respondent adds, however that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." Id at 2.  Additionally, he recommends "that the Court exercise its discretion" when determining a reasonable award for attorneys' fees and costs. Id. at 3. Petitioner did not file a reply thereafter.

\*   \*   \*

Although compensation was denied, petitioners who bring their petitions in good faith and who have a reasonable basis for their petitions may be awarded attorneys' fees and costs. 42 U.S.C. § 300aa-15(e)(1). In this case, although petitioner's claim was ultimately unsuccessful, the undersigned finds that good faith and reasonable basis existed throughout the matter.  Respondent also has not challenged the reasonable basis of the claim. A final award of reasonable attorneys' fees and costs is therefore proper in this case. See Greenlaw v. United States, 554 U.S. 237, 243 (2008) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.").

The Vaccine Act permits an award of reasonable attorney's fees and costs. §15(e). The Federal Circuit has approved the lodestar approach to determine

reasonable attorneys' fees and costs under the Vaccine Act. This is a two-step process. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008). First, a court determines an "initial estimate … by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Id. at 1348. Here, because the lodestar process yields a reasonable result, no additional adjustments are required. Instead, the analysis focuses on the elements of the lodestar formula, a reasonable hourly rate and a reasonable number of hours.

In light of the Secretary's lack of objection, the undersigned has reviewed the fee application for its reasonableness. See McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018).

> A.   Reasonable Hourly Rates

Under the Vaccine Act, special masters, in general, should use the forum (District of Columbia) rate in the lodestar calculation. Avera, 515 F.3d at 1349. There is, however, an exception (the so-called Davis County exception) to this general rule when the bulk of the work is done outside the District of Columbia and the attorneys' rates are substantially lower. Id. 1349 (citing Davis Cty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)). In this case, all the attorneys' work during this period was done outside of the District of Columbia.

Petitioner requests the following hourly rates for the work of her counsel: for Mr. Michael London, $375.00 per hour for work performed in 2016 and 2017, $400.00 per hour for work performed in 2018, and $425.00 per hour for work performed in 2019 and 2020; and for Ms. Virginia Anello, $350.00 per hour for work performed in 2016 and 2017, $375.00 per hour for work performed in 2018, $380.00 per hour for work performed in 2019, and $385.00 per hour for work performed in 2020. These rates are consistent with what counsel have previously been awarded for their Vaccine Program work and they shall be awarded herein. Giordano v. Sec'y of Health & Human Servs., No. 13-277V, 2020 WL 6058570 (Fed. Cl. Spec. Mstr. Sept. 10, 2020); Guzman v. Sec'y of Health & Human Servs., No. 15-736V, 2020 WL 3619889 (Fed. Cl. Spec. Mstr. Jun. 19, 2020).

### B. Reasonable Number of Hours

The second factor in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary. See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). The Secretary also did not directly challenge any of the requested hours as unreasonable.

Upon review of the submitted billing records, the undersigned finds most time billed to be reasonable. However, the undersigned finds that a reduction is necessary for several reasons. Concerning time billed by Ms. Anello, some of the time billed is paralegal or clerical in nature, such as filing documents and preparing documents to be sent to Dr. Gutstein. Additionally, for some of the time billed for communications there is a lack of information which the undersigned would need to determine the reasonableness of that time. For example, on March 30, 2018, Ms. Anello billed 2 hours for "Emailed back and Forth with Expert; Filed Report and CV with Court." Fees App. Ex. 5 at 5. Besides the issue that filing documents is clerical work and should not be billed for, two hours is a lot of time to spend on e-mails in a single day in the undersigned's experience. This concern could be alleviated if the description included the precise subject Ms. Anello and Dr. Gutstein were discussing and the number of e-mails sent on the matter. However, without such detailed information, it is difficult for the undersigned to assess its reasonableness.

The paralegal time billed also presents two issues. First, the time billed to review routine court orders and calendar dates (always 0.2) hours is excessive. In the undersigned's experience this task should take, at most, approximately six minutes. Second, the paralegal billing entries are replete with entries for "Medical Records Follow up" without any description of what this actually means. These entries were billed for anywhere from six to thirty minutes. It is unclear what follow-up would necessitate six minutes versus thirty minutes, or whether the follow-up was even necessary given the status of the records. Again, more detailed information would have helped the undersigned assess whether this time is reasonable.

On the whole, these issues are relatively minor. Therefore, the undersigned finds that an overall reduction of three percent is reasonable to offset them. This results in a reduction of $1,685.02. Petitioner is therefore awarded final attorneys' fees of $54,482.48.

### C. Costs Incurred

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994). Petitioner requests a total of $23,151.84 in costs. Most of this amount is attributable to work performed by petitioner's medical expert Dr. Gutstein, with the remainder for acquisition of medical records and medical literature, postage, and the Court's filing fee. Fees App. Ex. 2 at 2.

For the work of Dr. Gutstein, petitioner seeks reimbursement of $21,250.00, representing 42.5 hours billed at $500.00 per hour. Dr. Gutstein is board certified in neurology and currently is a private practitioner as well as an assistant professor of Neurology at the New York University School of Medicine. In the past, Dr. Gutstein worked for the Neuro Care Center in New York. Exhibit 18 (curriculum vitae). This appears to be Dr. Gutstein's first time performing expert work in the Vaccine Program – the undersigned was not able to find any instances of his prior program work and petitioner has not noted any such instances.

Petitioner has offered no argument supporting that $500.00 per hour is a reasonable hourly rate for Dr. Gutstein's work. See Guidelines, Section X. Chapter 2.D. ("The application for payment of experts' fees and costs must contain the same supporting documentation that is required for attorneys' fees and costs.") Although the work of neurologists who are well-known in the Vaccine Program has been compensated at $500.00 per hour, many neurologists have frequently been awarded less. See Abbott v. Sec'y of Health & Human Servs., No. 14-907V, 2020 WL 8766524 (Fed. Cl. Spec. Mstr. Dec. 4, 2020) (noting instances of neurologists being compensated at $400.00 per hour).

Some argument and/or evidence regarding Dr. Gutstein's proposed hourly rate would have been appropriate because an expert's reasonable hourly rate depends, in part, on "the nature, quality, and complexity of the information provided." Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 206 (2009). Here, the quality of Dr. Gutstein's reports was poor. Dr. Gutstein's reports were premised on the theory of autoimmune syndrome induced by adjuvants ("ASIA"), which the undersigned noted multiple times is an unreliable and unpersuasive theory which has never been successfully argued in the Vaccine Program. 2020 WL 3444163 at *11. A neurologist more experienced in Vaccine Program litigation likely would have premised her (or his) causation opinion on an alternative medical theory that would have a greater likelihood of success. Alternatively, a more experienced neurologist might have determined quickly to

not perform work on a case in which ASIA might be the only viable theory of causation. In sum, petitioner's claim that the vaccine harmed her was not well-served by Dr. Gutstein's non-persuasive attempts to apply an ASIA theory to petitioner's symptoms. Therefore, Dr. Gutstein should not be compensated at an hourly rate on par with experts who offer more persuasive opinions.

For these reasons, the undersigned finds that $350.00 per hour is a more appropriate hourly rate for Dr. Gutstein's casework. Therefore, a reasonable amount for his work is $14,875.00. The remainder of the costs are reasonable and supported with proper documentation. Petitioner is therefore awarded final attorneys' costs of $16,776.84.

D.   Conclusion

The Vaccine Act permits an award of reasonable attorney's fees and costs. 42 U.S.C. § 300aa-15(e). Accordingly, I award a total of **$71,259.32** (representing $54,482.48 in attorneys' fees and $16,776.84 in attorneys' costs) as a lump sum in the form of a check jointly payable to petitioner and her attorney, Mr. Michael London.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[2]

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master

---

[2] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.